UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IRON HILL BREWERY OF<br>BUCKHEAD, LLC<br><br>and<br><br>IRON HILL BREWERY, LLC<br><br>Defendants. | CIVIL ACTION NO.<br><br><br>JURY TRIAL DEMAND |

## **COMPLAINT**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Jerrell McGirt ("McGirt"). The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendants Iron Hill Brewery of Buckhead, LLC ("Iron Hill Brewery Buckhead") and Iron Hill Brewery, LLC (collectively, "Defendants" or "Iron Hill Brewery") discriminated and retaliated against McGirt when they

terminated his employment because of his race and in retaliation for engaging in protected activity.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     Defendant Iron Hill Brewery Buckhead is a restaurant and brewery located in Atlanta, Georgia.

5.      At all relevant times, Defendant Iron Hill Brewery Buckhead, a Georgia corporation, has continuously been doing business in the State of Georgia and the City of Atlanta, and has continuously had at least 15 employees.

6.      At all relevant times, Defendant Iron Hill Brewery Buckhead has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7.      Defendant Iron Hill Brewery LLC is a company that owns, operates, and/or contracts for the operation of Iron Hill Breweries and restaurants nationally, through employees, contractual arrangements, and/or subsidiary, holding, operations, or otherwise affiliated or related entities, including Defendant Iron Hill Brewery Buckhead.

8.      Defendant Iron Hill Brewery, LLC provides operational support to Defendant Iron Hill Brewery Buckhead, including in-person managerial support, hiring and firing of employees, and human resource department support.

9.      Defendant Iron Hill Brewery, LLC is the parent company of Defendant Iron Hill Brewery Buckhead.

10.     Defendants collectively operate under the business name "Iron Hill Brewery."

11.     Defendant Iron Hill Brewery, LLC is organized under the laws of the State of Delaware and does business in the State of Georgia through

3

Defendant Iron Hill Brewery Buckhead, and through corporate employees operating out of its corporate office who control, manage, and advise employees in Atlanta, Georgia.

12.     Defendant Iron Hill Brewery Buckhead distributed an employee policy handbook to McGirt which lists "Iron Hill Brewery, LLC" on each page.

13.     McGirt was subject to Iron Hill Brewery, LLC's employee policies.

14.     Employees of Defendant Iron Hill Brewery, LLC facilitated and participated in McGirt's discriminatory termination.

15.     Defendant Iron Hill Brewery, LLC sent management members to Defendant Iron Hill Brewery Buckhead's facility to manage its Buckhead location.

16.     Defendants are so integrated with respect to ownership and operations as to constitute a single or integrated employer for purposes of Title VII.

17.     Alternatively, Defendants each exercised sufficient control over the terms and conditions of McGirt's employment as to constitute McGirt's joint employers for purposes of Title VII.

18.     At all relevant times, Defendant Iron Hill Brewery, LLC has conducted business in the State of Georgia and has continuously maintained at least 15 employees.

4

19.    At all relevant times, Defendant Iron Hill Brewery, LLC has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

20.    More than thirty days prior to the institution of this lawsuit, McGirt filed a charge with the Commission alleging violations of Title VII by Defendants.

21.    On September 11, 2023, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

22.    On November 28, 2023, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

23.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

24.     McGirt began working for Defendants on or around November 9, 2020, as a Line Cook and was later promoted to Sous Chef-in-training.

25.     On or around June 3, 2021, McGirt complained to Defendants' Regional Manager that Defendants' trainers were mistreating women, African American employees, and Hispanic employees.

26.     Thereafter, on or around June 8, 2021, McGirt followed up and again complained to Defendants' General Manager, Defendants' Interim Executive Chef, and McGirt's acting supervisor that Defendants' trainers were mistreating employees and disrespectfully speaking to employees.

27.     On or around June 12, 2021, McGirt complained again to Defendants' Regional Manager that Defendants' trainers were mistreating employees.

28.     On or around June 28, 2021, McGirt complained to Defendants' Regional Manager that Hispanic employees were improperly removed from the schedule.

29.     On or around July 2, 2021, Defendants sent McGirt home after McGirt asked his acting supervisor to "treat him like a human being," and

Defendants told McGirt not to return to work again until they had a chance to review McGirt's previous writeups.

30.    McGirt did not have any previous writeups.

31.    After Defendants sent McGirt home, Defendants' Front of House Supervisor and Acting General Manager told McGirt "they want to fire you," and that Defendants did not like McGirt "speaking up."

32.    After Defendants sent McGirt home on or around July 2, 2021, McGirt emailed Defendants stating, "many of the employees and recently separated employees have . . . concerns of verbal abuse, verbal assault, discrimination and mistreatment because of gender; and discrimination and mistreatment because [of] both race and citizenship . . . ."

33.    In the same July 2, 2021 email, McGirt reported that immediately after he complained of discrimination to Defendants, his acting supervisor began to speak to him disrespectfully.

34.    In the same email, McGirt reported that a server who was nursing was being forced to express breast milk in the public restroom because Defendants' managers would not leave the private office in the restaurant.

35.    On or about July 5, 2021, Defendants requested additional information from McGirt regarding his complaints of discrimination in the workplace. In response, McGirt provided additional information to Defendants.

7

36.     On or about July 6, 2021, Defendants issued McGirt a "final written warning," although he had not received any prior warnings.

37.     The "final written warning" was the first written warning McGirt received from Defendants.

38.     McGirt did not receive any written warnings prior to reporting Defendants' discriminatory behavior.

39.     The "final written warning" alleged that when McGirt's acting supervisor told him he was not meeting standards, McGirt responded "aggressively," stating that he wished to be treated like a human being.

40.     Other employees of Defendants, including managers and employees outside of McGirt's protected class, often used aggressive and/or vulgar language in the kitchen and workplace, without being disciplined or discharged.

41.     On or about July 11, 2021, Defendants' Sous Chef told McGirt to "tone it down," and to "stop being a coon."

42.     In response, McGirt sent Defendants' Sous Chef a text message stating, "I'm not going to do anything fireable and I won't be intimidated to quit…I'm no coon no thug to be taken advantage of."

43.     Defendants' Sous Chef did not complain to Defendants about the text message from McGirt.

44.    On or about July 11, 2021, Defendants terminated McGirt's employment.

45.    The use of racial slurs was commonplace in Defendants' kitchen and workplace.

46.    At least one non-African American bartender made racial remarks against African American employees and customers, to include that "there were too many Black servers" and that he "wanted pretty White faces in the bar."

47.    Despite employees reporting the racial marks alleged in Paragraph 46 to Human Resources, Defendants did not terminate the employment of the non-African American bartender.

48.    Defendants' actions taken with respect to McGirt, as described above, were taken and/or ratified by individuals within sufficiently elevated company leadership so as to be attributable to Defendants.

## STATEMENT OF CLAIMS

49.     The EEOC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 48 as if fully asserted herein.

### *Discriminatory Termination*

50.     Since at least July 11, 2021, Defendants have engaged in unlawful employment practices at their Buckhead location, in violation of Section 706(f)(1) and (3) of Title VII by terminating McGirt because of his race in violation of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3).

51.     McGirt, African American, is a member of a protected class pursuant to Title VII.

52.     McGirt was qualified for his position as Sous chef-in-training.

53.     Defendants subjected McGirt to adverse action by terminating his employment on or about July 11, 2021.

54.     Defendants treated similarly situated employees outside of McGirt's protected class more favorably than they treated McGirt.

55.     Defendants applied work rules in a discriminatory manner.

56.     Defendants' reason for terminating McGirt is pretext for unlawful race discrimination.

57.    The unlawful employment practices complained of above were intentional.

58.    The unlawful employment practices complained of above were done with malice and/or with reckless indifference to McGirt's federally protected rights.

### Retaliation

59.    Since at least June 3, 2021, Defendants have engaged in unlawful employment practices at their Buckhead location, in violation of Section 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3 by retaliating against McGirt when he complained of Defendants' discriminatory behavior.

60.    McGirt engaged in statutorily protected activity.

61.    McGirt had a good faith belief that Defendants were unlawfully discriminating against Hispanic employees and women when he complained on or about June 3, 2021.

62.    McGirt had a good faith belief that Defendants were unlawfully discriminating against Hispanic employees when he complained again on or about June 28, 2021.

63.    McGirt had a good faith belief that Defendants were engaged in unlawful discriminatory behavior against Hispanic employees and female

employees when he sent an email to Defendants on or about July 2, 2021, regarding national origin and sex discrimination in the workplace.

64.    McGirt had a good faith belief that Defendants were engaged in unlawful discriminatory behavior.

65.    McGirt subjectively believed he put Defendants on notice of their unlawful discriminatory behavior.

66.    Defendants issued McGirt a "final written warning" in retaliation for his complaints of discrimination.

67.    Other employees were not issued written warnings for substantially similar behavior.

68.    There is a causal connection between McGirt's termination and his protected complaints of discrimination.

69.    On or around July 2, 2021, Defendants' Front of House Supervisor told McGirt, "they want to fire you," and that Defendants did not like McGirt "speaking up."

70.    Temporal proximity is established by the very close period between McGirt's termination on or about July 11, 2021, and his report of national origin and sex discrimination on or about July 2, 2021.

71.    The unlawful employment practices complained of above were intentional.

12

72.    The unlawful employment practices complained of above were done with malice and/or with reckless indifference to McGirt's federally protected rights.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with Defendants, from terminating employees because of their race, and engaging in any employment practice which discriminates on the basis of race.

B.    Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with Defendants, from terminating employees in retaliation for their engagement in protected activity.

C.    Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees, with an emphasis on race discrimination and retaliation, and which eradicate the effects of their past and present unlawful employment practices.

D.    Order Defendants to make McGirt whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief

necessary to eradicate the effects of Defendants' unlawful employment practices, including, but not limited to reinstatement or front pay in lieu of reinstatement.

E.      Order Defendants to make McGirt whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F.      Order Defendants to make McGirt whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.      Order Defendants to pay McGirt punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

I.      Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN FLEGAL
Supervisory Trial Attorney

Iriel Jones
Trial Attorney
Georgia Bar No. 266716

U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
iriel.jones@eeoc.gov
Phone: (470) 531-4808
Fax: (404) 562-6905